IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In re: ) | |
| ) | Case No. 23-30246 |
| Bourbon Street LLC, ) | Chapter 11 – Subchapter V |
| d/b/a La Cantina, et al. ) | |
| ) | |
| Debtors, Jointly Administered. ) | |

**MOTION TO ENTER INTO**
**LEASE AGREEMENTS WITH INSIDERS**

Come now Bourbon Street LLC ("Bourbon Street"), Petri Enterprises, LLC ("Petri Enterprises"), and Gannett Peak, LLC ("Gannett Peak") (Bourbon Street, Petri Enterprises, and Gannett Peak being collectively known as the "Debtors" and each sometimes known as a "Debtor"), by and through undersigned counsel, pursuant to Section 363 of Title 11 of the United States Code, and move for leave to enter into lease agreements with (i) Mark Petri ("Mr. Petri"); and (ii) Wyoming Flats, LLC ("Wyoming Flats"), both insiders, and in support thereof state as follows:

I.  **Introduction**

These are jointly administered cases involving three restaurants, each trading as "La Cantina," alongside correlative bar and tavern operations. None of the Debtors own the premises in which they respectively operate, with Bourbon Street being party to an arm's length third party pre-petition lease, Petri Enterprises using space owned by Mr. Petri, and Gannett Peak using space owned by Wyoming Flats (an entity that, in turn, is owned by Mr. Petri). Equally, Bourbon Street, as part of its reorganization, now wishes to assume utilization of a mobile food truck, in addition to its brick-and-mortar premises, with the subject food truck being owned by Mr. Petri.

The Debtors are each acutely aware that they cannot use lease agreements as mechanisms to funnel above-market revenues to Mr. Petri and his non-filing company, Wyoming Flats. Mr.

1

Petri already draws a salary from each Debtor and is sensitive to any perceptions of self-dealing. The Debtors do, however, need to formalize the arrangements that permit each to occupy the commercial space in which they are imbedded. And Bourbon Street believes it will be well served – and, in turn, its estate and creditors well served – through an expansion into the food truck space, with such not only permitting heightened sales but, too, being an in-kind marketing opportunity for the La Cantina brand.

For these reasons, and as extrapolated upon *infra*, each Debtor now seeks leave to enter into a lease with an insider, on the terms and conditions set forth herein.

## II.     Proposed Lease Terms

None of the three proposed leases exist in a separate written form as of present and, to the contrary, the full terms of each lease are memorialized herein. Should this motion be granted, the terms will be copied into an appropriately-captioned document, set above appropriate signature lines, and executed by both the correlative Debtor and the correlative Lessor. By design, the terms are simplistic in nature (at least relative to the oft-loquacious nature of commercial leases). The terms are as follows:

### a. Petri Enterprises

i. Petri Enterprises will pay to Mr. Petri, on or before the first business day of each month, the sum of $1,100.00 (the "Petri Enterprises Rent"), as and for ongoing use of the demised premises commonly known as 24 Center Avenue North, Mayville, North Dakota 58257 (the "Petri Enterprises Location"). The Petri Enterprises Location shall be more specifically defined as the space utilized by Petri Enterprises between January 1, 2023 and July 28, 2023, together with such ingresses and egresses commonly utilized by the patrons of Petri Enterprises between January 1, 2023 and July 28, 2023.

    ii. The Petri Enterprises Rent shall be paid to Mr. Petri, or the designee of Mr. Petri's election, by commercial check, cashier's check, electronic funds transfer, or wire transfer, and shall be paid in the lawful currency of the United States.

    iii. Should there come a time when the terms of all debt secured by the Petri Enterprises Location, owing to one or more third party banks insured by the Federal Deposit Insurance Corporation, shall require the making of monthly payments less than $1,100.00, the Petri Enterprises Rent shall be decreased, in the next calendar month, to a sum equal to (a) 100% of such installment debt obligation; plus (b) one twelfth (1/12) of all annual taxes levied on the Petri Enterprises Location (if not included in the foregoing debt service payment); plus (c) one twelfth (1/12) of all annual insurance obligations borne by Mr. Petri for the Petri Enterprises Location (if not included in the foregoing debt service payment). Alternatively, Petri Enterprises shall have the option to instead directly pay all taxes on the Petri Enterprises Location, while also directly paying to insure the Petri Enterprises Location, and pay to Mr. Petri only a sum equal to that provided for in section (a) of the foregoing sentence.

    iv. No security deposit shall be paid under this lease.

    v. This lease shall continue until the earlier of (i) January 1, 2053; or (ii) the date of its termination pursuant to the allowances hereof.

    vi. Petri Enterprises shall be free to terminate this lease by giving written notice to Mr. Petri at least thirty (30) calendar days before the first business day of any month and, in such event, the lease shall be deemed terminated on the last calendar day preceding the first business day of the month for which such notice is given.

    vii. Mr. Petri shall be free to terminate this lease by giving written notice to Petri Enterprises at least ninety (90) calendar days before the date on which such termination

3

shall be effective, *provided* that in consideration for entering into this lease, Mr. Petri may not give such notice at any time prior to January 1, 2024.

        viii.    This lease shall be governed by the laws of North Dakota.

        ix.    The sole venue for any disputes arising out of, or concerning, this lease shall be the United States Bankruptcy Court for the District of North Dakota or, should such court lack subject matter jurisdiction, the state courts situated within Traill County, North Dakota, and the parties hereto irrevocably consent to the jurisdiction of each of the foregoing courts.

    **b. Gannett Peak**

        i.    Gannett Peak will pay to Wyoming Flats, on or before the first business day of each month, the sum of $1,800.00 (the "Gannett Peak Rent"), as and for ongoing use of the demised premises commonly known as 115 W Fifth Street, Grafton, North Dakota 58237 (the "Gannett Peak Location"). The Gannett Peak Location shall be more specifically defined as the space utilized by Gannett Peak between January 1, 2023 and July 28, 2023, together with such ingresses and egresses commonly utilized by the patrons of Gannett Peak between January 1, 2023 and July 28, 2023.

        ii.    The Gannett Peak Rent shall be paid to Wyoming Flats, or the designee of Wyoming Flats' election, by commercial check, cashier's check, electronic funds transfer, or wire transfer, and shall be paid in the lawful currency of the United States.

        iii.    Should there come a time when the terms of all debt secured by the Gannett Peak Location, owing to one or more third party banks insured by the Federal Deposit Insurance Corporation, shall require the making of monthly payments less than $1,800.00, the Gannett Peak Rent shall be decreased, in the next calendar month, to a sum equal to (a) 100% of such installment debt obligation; plus (b) one twelfth (1/12) of all annual taxes levied on the

4

Gannett Peak Location (if not included in the foregoing debt service payment); plus (c) one twelfth (1/12) of all annual insurance obligations borne by Wyoming Flats for the Gannett Peak Location (if not included in the foregoing debt service payment). Alternatively, Gannett Peak shall have the option to instead directly pay all taxes on the Gannett Peak Location, while also directly paying to insure the Gannett Peak Location, and pay to Wyoming Flats only a sum equal to that provided for in section (a) of the foregoing sentence.

      iv.      No security deposit shall be paid under this lease.

      v.      This lease shall continue until the earlier of (i) January 1, 2053; or (ii) the date of its termination pursuant to the allowances hereof.

      vi.      Gannett Peak shall be free to terminate this lease by giving written notice to Wyoming Flats at least thirty (30) calendar days before the first business day of any month and, in such event, the lease shall be deemed terminated on the last calendar day preceding the first business day of the month for which such notice is given.

      vii.      Wyoming Flats shall be free to terminate this lease by giving written notice to Gannett Peak at least ninety (90) calendar days before the date on which such termination shall be effective, *provided* that in consideration for entering into this lease, Wyoming Flats may not give such notice at any time prior to January 1, 2024.

      viii.      This lease shall be governed by the laws of North Dakota.

      ix.      The sole venue for any disputes arising out of, or concerning, this lease shall be the United States Bankruptcy Court for the District of North Dakota or, should such court lack subject matter jurisdiction, the state courts situated within Walsh County, North Dakota, and the parties hereto irrevocably consent to the jurisdiction of each of the foregoing courts.

5

    **c. Bourbon Street**

        i. Bourbon Street will pay to Mr. Petri, on or before the first business day of each month, the sum of $100.00 (the "Food Truck Rent"), as and for the use of a commercial quality food truck (the "Food Truck").

        ii. The Food Truck Rent shall be paid to Mr. Petri, or the designee of Mr. Petri's election, by commercial check, cashier's check, electronic funds transfer, or wire transfer, and shall be paid in the lawful currency of the United States.

        iii. Bourbon Street shall be obligated to pay all taxes, impositions and fees requisite to keep the Food Truck registered with the State of North Dakota and necessary to permit the Food Truck to be used for the mobile dispensation and sale of food products.

        iv. Bourbon Street shall pay all expenses related to the upkeep of the Food Truck, including ordinary maintenance/repairs and the costs of fuel.

        v. Bourbon Street shall pay to keep the Food Truck insured at a sum not less than the replacement cost of the Food Truck.

        vi. No security deposit shall be paid under this lease.

        vii. This lease shall continue until the earlier of (i) January 1, 2053; or (ii) the date of its termination pursuant to the allowances hereof.

        viii. Bourbon Street shall be free to terminate this lease by giving written notice to Mr. Petri at least thirty (30) calendar days before the first business day of any month and, in such event, the lease shall be deemed terminated on the last calendar day preceding the first business day of the month for which such notice is given.

        ix. Mr. Petri shall be free to terminate this lease by giving written notice to Gannett Peak at least ninety (90) calendar days before the date on which such termination shall

be effective, *provided* that in consideration for entering into this lease, Mr. Petri may not give such notice at any time prior to January 1, 2024 *unless* Bourbon Street's bankruptcy proceeding is converted to one under Chapter 7 of Title 11 of the United States Code, in which case Mr. Petri may give such notice at any time after the date of entry of such an order of conversion.

        x.        This lease shall be governed by the laws of North Dakota.

        xi.        The sole venue for any disputes arising out of, or concerning, this lease shall be the United States Bankruptcy Court for the District of North Dakota or, should such court lack subject matter jurisdiction, the state courts situated within Grand Forks County, North Dakota, and the parties hereto irrevocably consent to the jurisdiction of each of the foregoing courts.

### III. Argument: The Leases are Appropriate Exercises of the Debtors' Business Judgment

While the majority of topical case law concerns instances where a debtor seeks to lease its property to a third party, the transactions suggested above each involve one of the Debtors entering into a previously-unwritten (and, in the case of Bourbon Street, previously-non-existent) lease agreement with an insider. These accordingly appear to fall within the ambit of transactions where property of the Debtors' respective estates (*i.e.*, cash and cash equivalents) would be subject to "use" to make lease payments, and thusly governed by Section 363 of Title 11 of the United States Code. Each such proposed use is equitable in nature and represents a reasonable exercise of the respective Debtor's business judgment. It is accordingly appropriate to permit the entities to enter into these exceedingly-friendly and Debtor-favorable transactions.

Familiarly, a debtor in bankruptcy may "use" property of its estate, "other than in the ordinary course of business," after notice and a hearing. 11 U.S.C. § 363(b). As observed by the United States Bankruptcy Court for the Southern District of New York, "[i]n approving a

7

transaction conducted pursuant to section 363(b)(1), courts consider whether the debtor exercised sound business judgment." *In re Borders Group, Inc*., 453 B.R. 477, 482 (Bankr. S.D.N.Y. 2011) (citing *In re Chateaugay Corp.*, 973 F.2d 141, 144–45 (2d Cir.1992); *In re Lionel Corp*., 722 F.2d 1063, 1072 (2d Cir.1983); *In re Global Crossing Ltd.*, 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003) (citing *Lionel Corp*., 722 F.2d at 1071)).

Here, the two real estate leases are on terms that are designed to favor Petri Enterprises and Gannett Peak. The amount of rent proposed is correlative to the debt service payments owed by Mr. Petri and Wyoming Flats on the respective real estate assets, with those debt service obligations being to insured depository institutions that lend money in accord with prevailing market-based interest rates. So while Mr. Petri and his non-debtor entity will realize *some* benefit from these leases, inasmuch as the mortgage payments include an application of principal and, *ergo*, enhance Mr. Petri's and Wyoming Flats' equity positions in the property, the payments themselves are only in a sum requisite to keep liened obligations from becoming defaulted. Absent extraordinary circumstances, it is difficult to conceive of a third party landowner leasing real estate in a sum that is only equal to debt service payments, and these proposed transactions are accordingly crafted in a manner that should resolve any suspicions about beneficial insider dealings. Equally, the terms provide for each Debtor to have the ability to terminate the lease on short notice, so as to avoid the creation of a situation where either entity is bound by a long-term commitment.

The Food Truck lease, by contrast, is really Mr. Petri's effort to find a new, complimentary line of business for Bourbon Street, as the company endeavors to reorganize. Mr. Petri is acquiring the Food Truck in his own name, but intends it to be used by Bourbon Street. This will enhance the volume of Bourbon Street's sales while also furnishing a mechanism for Bourbon Street to

advertise the La Cantina brand by bringing topnotch food to potential consumers at various strategically-selected sites throughout the region. The proposed rent here is only $100.00, with the sum being more sincerely a token obligation aimed at ensuring it not appear that Mr. Petri is comingling a personal asset (the Food Truck) with the operations of Bourbon Street, and also to ensure it not appear the Food Truck is an in-kind capital contribution to Bourbon Street. The debt service obligations borne by Mr. Petri, in acquiring the Food Truck, well exceed $100.00 per month, and he is entering into this proposed lease on economically-disadvantageous terms because he believes it will ultimately help the financial health of Bourbon Street, an entity of which he is the sole owner.

## IV.   Conclusion

WHEREFORE, the Debtors respectfully pray this Honorable Court (i) permit each Debtor to enter into its correlative lease, as set forth herein; and (ii) afford such other and further relief as may be just and proper.

Respectfully submitted,

Dated: September 12, 2023    By:    /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
The Dakota Bankruptcy Firm
1630 1st Avenue N
Suite B PMB 24
Fargo, North Dakota 58102-4246
Phone: (701) 394-3215
mac@dakotabankruptcy.com
*Counsel for the Debtors*

*[Certificate of Service on Following Page]*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 12th day of September, 2023, a copy of the foregoing was served electronically upon filing via the ECF system. A copy is also being sent this day, alongside the notice appended hereto, via US Mail, postage prepaid, to all parties on the attached mailing matrix, except (i) the mailing matrix itself is not being included in the subject mailing); and (ii) no copy will be physically mailed to the Debtors or their counsel.

/s/ Maurice B. VerStandig
Maurice B. VerStandig