IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 23-30246 |
| Bourbon Street LLC, | ) | Chapter 11 – Subchapter V |
| d/b/a La Cantina, et al. | ) | |
| | ) | |
| Debtors, Jointly Administered. | ) | |

**OPPOSITION TO MOTION TO DISMISS OR CONVERT CHAPTER 11 CASES**

Come now Bourbon Street LLC ("Bourbon Street"), Petri Enterprises, LLC ("Petri Enterprises"), and Gannett Peak, LLC ("Gannett Peak") (Bourbon Street, Petri Enterprises, and Gannett Peak being collectively known as the "Debtors" and each sometimes known as a "Debtor"), by and through undersigned counsel, pursuant to Federal Rule of Bankruptcy Procedure 2002(a)(4), and in opposition to the Motion to Dismiss or Convert Chapter 11 Cases (the "Motion," as found at DE #94), filed by the Acting United States Trustee (the "UST"), state as follows:

**I.      Introduction**

The UST seeks dismissal or conversion of these cases on the basis that certain requested documents were not produced and, equally, on the theory that monthly operating reports were not timely filed. The UST is correct to emphasize the need for punctual operating reports and similarly correct to note a paucity of informally produced documents. The Debtors are, however, relieved to share that they are now current on the filing of monthly operating reports and, too, have produced to the UST all requested documents within their possession, custody and control.[1]

This opposition is filed chiefly in an abundance of caution, with there being a good faith belief the Motion may be withdrawn before any hearing thereupon might be held. Nonetheless,

---

[1] It appears two of 36 bank statements were omitted from a production; the Debtor is in the process of investigating if it has these statements. Assuming so, they will be produced in short order and, in any event, well before a hearing on the Motion.

while the Debtors do not quarrel with the nature of the requests promulgated by the UST, they do

note that the failures delineated in the Motion ought not invite dismissal or conversion of these

cases. To the contrary, plans are days away from being docketed and these are matters that can –

and legally should – proceed to confirmation of those plans.

## II.    Standard

Title 11 of the United States Code (the "Bankruptcy Code") provides that matters under

Chapter 11 may be converted or dismissed, after notice and a hearing, for "cause." 11 U.S.C. §

1112(b)(1). The same statutory provision then goes on to non-exhaustively delineate what may

constitute such cause, including, *inter alia*:

> (C) failure to maintain appropriate insurance that poses a risk to the estate or to the
> public; … (F) unexcused failure to satisfy timely any filing or reporting requirement
> established by this title or by any rule applicable to a case under this chapter; …
> (H) failure timely to provide information or attend meetings reasonably requested
> by the United States trustee…

11 U.S.C. § 1112(b)(4). "The list is illustrative, not exhaustive. Courts may find cause for other

equitable reasons." *In re Whetten*, 473 B.R. 380, 382 (Bankr. D. Colo. 2012) (citing 11 U.S.C. §

1112(b)(4); *In re FRGR Managing Member LLC*, 419 B.R. 576, 582–83 (Bankr.S.D.N.Y.2009)).

If a party in interest is able to set forth cause under the foregoing statutory provision, the

burden shifts to the Debtor to demonstrate the satisfaction of four criteria:

> The court may not convert a case under this chapter to a case under chapter 7 or
> dismiss a case under this chapter if the court finds and specifically identifies
> unusual circumstances establishing that converting or dismissing the case is not in
> the best interests of creditors and the estate, and the debtor or any other party in
> interest establishes that-- (A) there is a reasonable likelihood that a plan will be
> confirmed within the timeframes established in sections 1121(e) and 1129(e) of this
> title, or if such sections do not apply, within a reasonable period of time; and (B)
> the grounds for converting or dismissing the case include an act or omission of the
> debtor other than under paragraph (4)(A)-- (i) for which there exists a reasonable
> justification for the act or omission; and (ii) that will be cured within a reasonable
> period of time fixed by the court.

11 U.S.C. § 1112(b)(2). Thus, if the Motion is found to establish cause, the Debtors must then establish (i) unusual circumstances giving rise to the underlying cause; (ii) a reasonable likelihood of timely plan confirmation; (iii) reasonable justification for the cause giving rise to the underlying motion; and (iv) imminent cure of the subject deficiency.

### III.     Argument: The Debtors Have Been Insured at All Times Relevant

The UST argues for dismissal or conversion based upon each of the Debtors having "submitted some but not all of the necessary proof of insurance." Motion at ¶ 8. Such relief is inappropriate for two reasons. First, and by far most importantly, the Debtors have now each furnished the UST with proof of all forms of requested insurance. And, second, such insurance has been maintained at all times; there was never an absence of insurance in these cases – there was merely a delay in furnishing evidence of such.

The first point is relatively straightforward. The Debtors have now provided the UST with evidence of property insurance for all three entities, with each such policy have per-occurrence general liability coverage of at least $1 million, personal property coverage, and other endorsements. The Debtors have also furnished evidence of the buildings they lease being separately insured by the two insider landlords.[2] And the Debtors have shown their companies to be current with obligations to North Dakota Workforce Safety & Insurance, the governmental monopoly that administers workers' compensation insurance in the state.

The second point is slightly more nuanced: Section 1112 does not contemplate dismissal or conversion of a case for failure to produce evidence of insurance but, rather, for "failure to maintain appropriate insurance that poses a risk to the estate or to the public…" 11 U.S.C. §

---

[2] There is every reason to believe the building leased from a third party is, too, appropriately insured. The debtors do not feign to have as extensive of access to such information, however, and it does not seem that is amongst the issues raised by the UST.

3

1112(b)(4)(C). There is no evidence that the Debtors have ever failed to maintain insurance; much

to the contrary, a hearing on this matter would reveal evidence of continuous insurance. And, as a

necessary extension of such, there can be no showing of lapsed insurance inviting a risk to the

estate or the public since, as observed *passim*, there was never any lapsed insurance.

To be sure, the Debtors are not suggesting the UST ought to have to file a motion to dismiss,

and have a hearing thereupon, to discover if there is insurance. The UST was right to ask for proof

of the same and the Debtors are glad to have obliged that request prior to responding to the Motion.

But, from a purely legal perspective, the ongoing existence of insurance – not the furnishing of

proof thereof – is ultimately the dispositive inquiry under Section 1112(b)(4)(C).

    **IV.**    **Argument: Operating Reports Have Been Filed**

The UST also argues for conversion or dismissal based upon a since-cured absence of

monthly operating reports for two of the three debtors. Much like the certificates of insurance, this

issue has been remedially addressed, with reports now gracing the docket *sub judice*. And while

the Debtors do not seek to suggest that tardy filings ought to be regularly countenanced, they do

necessarily note that dismissal or conversion of a case, for failure to timely file operating reports,

is almost uniformly reserved for situations where such failure is indicative of a larger scheme of

bad faith.

The Eighth Circuit's Bankruptcy Appellate Panel has addressed dismissal in wake of a

failure to file operating reports in the prism of a debtor that (i) *never* filed the reports, even tardily;

and (ii) that carried on a protracted course of bad faith conduct, of which the failure was indicative:

> After carefully reviewing the record, we agree that there is strong evidence in
> support of the bankruptcy court's finding of bad faith. The debtors violated court
> orders by failing to provide monthly financial reports and by failing to segregate
> and account for dealings with Chance Acre. There was a pattern of evasiveness and
> feigned losses of memory during hearings. Chance Land refused to regard the
> Bank's debt as fully secured, refused to acknowledge the full amount owed Nancy

4

Kerr, and failed to recognize federal tax liability. There was also a substantial amount of self-dealing and asset manipulation without court approval: assets were commingled with Chance Acre; land was sold at less than value to Kerr's current wife with the taxes paid; more than $79,000 was distributed from Chance Land to Kerr; more than $20,000 was paid to Kerr's stockbrokers to cover stock losses; and a personal bond of more than $20,000 was posted by Chance Land on behalf of Charles Kerr. In addition, countless frivolous motions were introduced and actions commenced in an effort to frustrate the creditors. Many were clearly groundless and had already led both the federal district court and Iowa state court to sanction the debtors and their attorney. … The bankruptcy court also found that reorganization was impossible.

*In re Kerr*, 908 F.2d 400, 404 (8th Cir. 1990) (citations to internal record omitted). While seemingly extreme, this is illustrative of the seeming omnipresence of exacerbating factors in cases where a failure to timely docket operating reports invites dismissal or conversion. *See, e.g. In re Tornheim*, 181 B.R. 161, 164 (Bankr. S.D.N.Y. 1995) (dismissing a case where the debtor neglected to docket operating reports for "over one year" whilst also failing, "despite sixteen months in chapter 11, to file a plan and disclosure statement"); *In re Whetten*, 473 B.R. 380, 383-84 (Bankr. D. Colo. 2012) (noting "many small business debtors are guilty" of not timely filing operating reports, but dismissing the case of a debtor that "failed to file any monthly reports until six months into the case"); *In re Papardelle 1068, Inc.*, 2020 WL 6054784, *1 (Bankr. D.D.C. 2020) (dismissing a case where the debtor filed 10 successive operating reports that were, respectively, 42, 50, 50, 46, 15, 74, 48, 73, 43, and 16 days late; failed to pay post-petition taxes; and established a track record of unprofitability that revealed "the absence of a reasonable likelihood of rehabilitation").

One more round of operating reports will come due before the confirmation hearing in these cases, and the Debtors have every confidence those reports will be timely in nature. Being

5

tardy with these prior filings is neither intentional nor ideal. But it is respectfully urged that such,

in and of itself, ought not invite grounds for conversion or dismissal of otherwise-viable cases.[3]

### V.        Argument: Documents Have Been Furnished

Finally, the UST points to several bank statements that were not furnished when originally

requested. This failure was for a relatively benign reason: the Debtors did not have the documents.

Like many small businesses, these entities did not keep the finest records of old bank statements

and, as such, did not have a compendium of statements to be easily handed over upon request. But

the Debtors have now furnished almost all of the requested documents, having retrieved them from

their current bank and having received the generous cooperation of Choice Financial Group – a

creditor herein – in culling records it held of the Debtors' pre-petition bank accounts.

Section 1112(b)(4)(H) does not have a temporal limitation. Unlike the operating report

requirement, which is pegged to the timeline set forth in Rule 2015, there is no hardline measure

of the time to comply with UST informational requests; the statutory language is focused on

whether or not compliance has occurred – not the promptness of such compliance. Such ought not

be construed as an argument that tardy compliance well promotes much of anything. But, from a

purely legal perspective, the Debtors' ability to produce these records is exonerative of the prospect

of dismissal or conversion on these narrow grounds.

### VI.      Conclusion

Should the Motion remain pending long enough for a hearing to be held, the Debtors are

confident they will be able to satisfy the burden-shifting rigors of Section 1112 and make an

evidentiary showing as to why dismissal or conversion is inappropriate. These are three small

---

[3] As has been previously shared, the Bourbon Street plan is likely to be one of liquidation, but such is still very much a viable means of using the bankruptcy process to facilitate an orderly and efficient wind up of affairs.

businesses, operated by a hardworking principal, employing North Dakotans, serving their respective communities. One of the entities may fall ultimately victim to a lease too onerous to permit reorganization; the other two have lengthy histories that will well support projections of disposable income capable of being utilized to fund plans of reorganization. The Debtors appreciate the integral role of the UST, understand why the Motion was filed, and are relieved to have since made productions of documents – and filings of operating reports – that should address the concerns set forth therein. And it is, thusly, respectfully urged the Motion be denied.

WHEREFORE, the Debtors respectfully pray this Honorable Court (i) deny the Motion; and (ii) afford such other and further relief as may be just and proper.

Respectfully submitted,

Dated: October 25, 2023           By:      /s/ Maurice B. VerStandig
                                           Maurice B. VerStandig, Esq.
                                           The Dakota Bankruptcy Firm
                                           1630 1st Avenue N
                                           Suite B PMB 24
                                           Fargo, North Dakota 58102-4246
                                           Phone: (701) 394-3215
                                           mac@dakotabankruptcy.com
                                           *Counsel for the Debtors*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 25th day of October, 2023, a copy of the foregoing was served electronically upon filing via the ECF system.

/s/ Maurice B. VerStandig
Maurice B. VerStandig