IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In re: ) | |
| ) | Case No. 23-30246 |
| Bourbon Street LLC, ) | Chapter 11 – Subchapter V |
| d/b/a La Cantina, et al. ) | |
| ) | |
| Debtors, Jointly Administered. ) | |

**GANNETT PEAK, LLC'S SUBCHAPTER V PLAN OF REORGANIZATION**

Comes now Gannett Peak, LLC ("Gannett Peak" or the "Debtor"), by and through undersigned counsel, pursuant to the rigors of Official Form 425A, and provides the following plan of reorganization (the "Plan") herein:[1]

**Background for Cases Filed Under Subchapter V**

a. **Description and History of the Debtor's Business**

Gannett Peak was formed on January 31, 2019 and has operated a La Cantina restaurant, in Grafton, North Dakota, at all times since. The restaurant is the local community's premiere Tex-Mex dining establishment, with a proud – and protracted – history of offering top notch cuisine, savory cocktails, and a relaxingly casual environment for the enjoyment of customers.

While business has fluctuated in sync with the eccentricities of the restaurant industry, the Debtor has endured with a loyal patron base and exemplary group of employees. Unfortunately, however, the recent stresses of a pandemic that made public gatherings taboo, coupled with erratic fluctuations in the price of foods (especially meats), brought immense financial pressure on Gannett Peak. These stresses were compounded by efforts to use the assets and cash flows of the Debtor to support a sister restaurant, using the same La Cantina name, that recently opened in Grand Forks.

Faced with these economic hardships, Gannett Peak followed in the steps of so many small businesses, turning to a series of merchant cash advances, for infusions of much-needed operating capital. The corporate equivalent of consumer payday loans, these putative sales of forward-looking receivables created a vicious cycle, whereby the Debtor was compelled to turn to new cash advances to retire its obligations on old cash advances, constantly bartering hefty forward-looking revenues at bargain-basement discounts, all in designs of managing to keep the lights on long enough to open for business another day.

To be sure, the pandemic and rising food prices weighed heavily on the Debtor. And the restaurant industry is notoriously finicky, with thin margins and – especially in North Dakota – seismic seasonal fluctuations in cash flow. But had Gannett Peak not endeavored to help prop up

---

[1] Large swaths of this Plan are substantively identical to one being docketed by Petri Enterprises, LLC of even date herewith. The two documents are not, however, identical; there are core differences in the two entities' creditor bases, as well as slight differences in the entities' histories.

1

a sister company, and not then fallen into the deleterious universe of merchant cash advances, this bankruptcy would almost assuredly have never been filed.

Nonetheless, Gannett Peak did travel down those routes and so, on July 29, 2023, the Debtor petitioned for Chapter 11 relief, pursuant to the allowances of Section 301 of Title 11 of the United States Code. The Debtor's operations since have been relatively benign, continuing to operate its business without any notable issues and ridding itself of any support for a sister business (which also sought bankruptcy protection on the same date). While Gannett Peak has lost money during its first two months as a debtor-in-possession, such is largely attributable to the seasonal nature of the industry and market in which it operates, with August and September being perennially poor operational months.

b. **Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a Chapter 7 liquidation. The Debtor entered bankruptcy with $53,011.83 in assets and has two secured creditors. One of the secured creditors appears to have filed a UCC financial statement three days *after* this case was commenced, rendering the same avoidable under Section 544 of the Bankruptcy Code. The other secured creditor has a properly-filed UCC financing statement and, by agreement with the Debtor, will have its claim reduced to $35,000.00, accruing interest at the rate of 7% per annum until paid.[2] Without this agreement, that creditor's claim would be for more than $55,000.00 and would subsume the entirety of the Debtor's estate, leaving nothing for unsecured creditors.

A Chapter 7 liquidation would deprive the estate of the benefit of the aforementioned agreement, would necessarily follow the incursion of significant legal fees expended in defense of any motion to convert this case to Chapter 7, would include additional legal fees incurred by a Chapter 7 trustee, and would likely result in a "no asset" estate by virtue of the foregoing secured claim not being compromised. Conservatively, the legal fees attendant to such a process would be at least $10,000.00 in the aggregate. And the distributed sum to unsecured creditors – net of these expenses and the aforementioned secured claim – would be $0.00, with a Chapter 7 estate being administratively insolvent.

The Debtor proposes to pay general unsecured creditors at least $3,417.48 under this plan, a sum that will be increased by any adversary litigation recoveries and, in any instance, that is well in excess of the foregoing proceeds (*vel non*) that would be potentially made available through a Chapter 7 liquidation.

c. **Ability to Make Future Plan Payments and Operate Without Further Reorganization**

The Debtor must also show that it will have enough cash over the life of the Plan to make the required Plan payments. Forward-looking financial projections for the Debtor are attached

---

[2] As noted *infra*, the Debtor and Funding Metrics LLC d/b/a MicroAdvance have been in negotiations through counsel and appear to have reached an agreement as to the treatment of the creditor's claim. The creditor's vote in favor of confirmation of this Plan will memorialize such, as the parties do not otherwise have a written agreement and have not filed a motion under Federal Rule of Bankruptcy Procedure 9019 to effectuate a compromise.

hereto as **Exhibit A**. These figures show that the Debtor will have projected disposable income (as defined in § 1191(d) of the Bankruptcy Code [as defined below]), remaining after the payment of administrative expenses addressed below, for the period in § 1191(c)(2).

For the avoidance of doubt, the restaurant business is notoriously difficult, unaided by rising product costs and a general decline in consumer spending habits. The projections attached to this Plan are made in good faith and rooted in empirical, historical data points. But these are not guarantees and, even more so than with most businesses, are speculative to a necessary degree. The Debtor is resolved to make best efforts toward a successful reorganization, and believes creditors are uniformly aided – not hampered – through such efforts. But the Debtor is also acutely aware that a further spike in costs, or a failure of sales to rise in accord with inflationary measures, could change ink from black to red and invite a return to this Honorable Court.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

**Article 1.      Summary**

This Plan under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") proposes to pay creditors of the Debtor from the general cash flow of the Debtor.

The Plan provides for:     2 classes of secured claims;

2 classes of non-priority, unsecured claims; and

1 class of an equity holder.

Non-priority unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately 5 cents on the dollar, though such distribution may be less if the Debtor does not succeed in connection with certain claim objections and/or if any government taxing authority files a proof of claim prior to the January 25, 2024 deadline for such claims to be docketed. The Plan also provides for the payment of administrative claims.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

**Article 2.      Classification of Claims and Interests**

| | | |
|---|---|---|
| **Section 2.01** | **Class 1** | The secured claim of Funding Metrics LLC. |
| **Section 2.02** | **Class 2** | The disputed claim of Good Funding, LLC, which has been filed as a secured claim but which the Debtor maintains to be (i) unsecured; and (ii) overstated. |
| **Section 2.03** | **Class 3** | The secured claim of Alerus Financial, N.A. |
| **Section 2.04** | **Class 4** | All general unsecured claims, except for that of Good |

3

|  |  |  |
|---|---|---|
| | | Funding, LLC. |
| **Section 2.05** | **Class 4** | Equity interests in the Debtor. |
| **Section 2.06** | **Class Identification** | A schedule of each class and its constituent creditors is appended hereto as **Exhibit B.** The total size of the non-disputed claims (or, where applicable, the non-disputed portion of claims) in each class is as follows: |

        Class 1: $35,000.00

        Class 2: $3,420.75

        Class 3: $351,248.41

        Class 4: $64,056.15

        Class 5: N/A (equity)

The total undisputed secured claims total $386,248.41.[3] The total undisputed unsecured claims total $67,476.90.

**Article 3.    Treatment of Administrative Expense Claims and Court Costs**

| | | |
|---|---|---|
| **Section 3.01** | **Unclassified Claims** | Under § 1123(a)(1) of the Bankruptcy Code, certain administrative expense claims are not in classes. |
| **Section 3.02** | **Administrative Expense Claims** | Each holder of an administrative expense claim allowed under § 503 of the Bankruptcy Code will be paid in full on the effective date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor. All professionals including the Debtor's counsel and the Subchapter V Trustee will need to file applications with the Court to seek approval of their fee and expenses as allowed administrative expense claims within 30 days of the Effective Date. Any allowed administrative expense claim will be paid directly by the Debtor within five (5) business days of an order allowing such claim becoming a final order. Any such claims paid by the Debtor prior to its first scheduled ordinary payment under this Plan shall be a credit against said payment. The foregoing notwithstanding, if the Debtor |

---

[3] This number is deceptive. While the claim of Alerus Financial, NA is fully secured, such security is against the assets of a non-filing entity. The claim is unsecured as to the Debtor.

4

lacks the cash on hand to pay such a claim within five (5) days of said claim being allowed pursuant to a final order, and if the creditor to whom such claim agrees, the Debtor may pay such claim through the ordinary payments provided for under this Plan.

| | | |
|---|---|---|
| **Section 3.03** | **Priority Tax Claims** | Each holder of a priority tax claim will be paid in full not later than July 28, 2028. |
| | | There are not currently any priority tax claims in this case, though both state and federal taxing authorities were given notice of this proceeding and, as such, have until January 25, 2024 to file such claims. |
| **Section 3.04** | **Statutory Fees** | There are no statutory fees due in this case. |
| **Section 3.05** | **Prospective Quarterly Fees** | There are no prospective quarterly fees that will be due in this case. |

**Article 4.**     **Treatment of Claims and Interest Under the Plan**

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 – Funding Metrics LLC d/b/a MicroAdvance. | Impaired | Class 1 consists of the claim of Funding Metrics LLC d/b/a MicroAdvance. This creditor has filed a proof of claim for $55,160.00.[4] The Debtor disputes this claim, asserting it should only be for $35,000.00 – the sum this creditor paid to the Debtor for the purchase of future receivables. |
| | | Counsel for this creditor and the Debtor have negotiated a resolution of the dispute underlying this claim, whereby the claim will be reduced to $35,000.00 and paid over the life of this Plan with interest at the rate of 7% per annum, resulting in amortized payments of $693.05 per month. The Debtor submits |

---

[4] This claim was filed in the matter of *In re Bourbon Street LLC*, Case No. 23-30246, which is the lead matter for three jointly administered cases. Upon information and belief, the claim is against this Debtor's estate, and not against the estate of Bourbon Street LLC.

5

this is an excellent resolution that will avoid the prospect of protracted litigation, will mitigate any risks of failing to prevail in such litigation, and will furnish certainty that aids in the reorganizational process.

This agreement does not exist in any formal, written document but is memorialized in this Plan as a good faith representation of what the Debtor understands. A vote by Funding Metrics LLC d/b/a MicroAdvance, in favor of this Plan's confirmation, will be construed as an acknowledgement of this agreement and acquiescence to the terms thereof, as reflected in this Plan.

| | | |
|---|---|---|
| Class 2 – Good Funding, LLC | Impaired | This class consists solely of the claim of the Good Funding, LLC. This is a merchant cash advance claim where it appears the Debtor received $50,634.00 in exchange for the conveyance of $74,124.00 in future accounts receivable, of which $47,213.25 was paid prepetition. The claim is supported by a UCC Financing Statement that was filed post-petition. The Debtor maintains (i) the underlying sale was a fraudulent conveyance, leaving Good Funding, LLC with a claim for only those monies it actually paid; (ii) the post-petition filing of the UCC financing statement is a violation of the automatic stay set forth in Section 362 of the Bankruptcy Code; and (iii) the security interest is avoidable under Section 544 of the Bankruptcy Code. The Debtor will object to this claim, urging it should only be allowed in the sum of $3,420.75 (the portion of the purchase price not yet reimbursed by the Debtor). |

6

|  |  |  |
|---|---|---|
|  |  | This class will be paid *pari passu* with Class 4 unless the Debtor fails in connection with efforts to avoid the security interest. |
|  |  | If the Debtor fails in connection with efforts to have this claim deemed unsecured, but succeeds in having this claim reduced, this class will be paid $56.95 per month for the life of this Plan, after the retirement of administrative expense claims, together with an additional payment, in the 60th month of the Plan, in the amount of $3.75.[5] |
|  |  | If the Debtor fails to have this claim reduced *and* fails to have this claim deemed unsecured, the creditor will be given a secured promissory note (the "Good Funding Note"). The Good Funding Note (i) will be in a sum equal to the allowed claim of Good Funding, less any payments pursuant to this Plan, (ii) will bear interest at the rate set forth pursuant to the allowances of Section 1274(d) of Title 26 of the United States Code, and (iii) will be payable over a period of five (5) years, commencing on the first business day of the sixty first (61st) month after the Effective Date. The Good Funding Note will be amortized over its five year duration, with no provision for a balloon payment. The Good Funding Note shall be substantially in the form attached hereto as **Exhibit C**. |
| Class 3 – Alerus Financial, N.A. | Unimpaired | This claim is secured by real estate owned by non-debtor insider Wyoming |

---

[5] That the total payments intended for general unsecured creditors, capable of being applied to this claim if deemed secured, are within $4.00 of the claim amount, is a coincidence.

7

| | | |
|---|---|---|
| | | Flats LLC, with the property being leased by the Debtor. The Debtor is a guarantor of this obligation, which is not in default, with Wyoming Flats LLC being the direct obligor. The Debtor is paying its rent, putatively due to Wyoming Flats LLC, directly to Alerus Financial, and thereby ensuring the loan remains in good standing.[6] As such, for so long as the Debtor makes monthly rental payments, the guaranty ought not be called. The Debtor will thusly honor its purely-contingent obligation to Alerus Financial, N.A. by continuing to make rental payments directly to the lender. |
| Class 4 – General unsecured claims | Impaired | This class consists of all allowed unsecured claims, except for any allowed unsecured claim of Good Funding, LLC. This class shall be paid *pari passu* with Class 2, unless the claim of Good Funding is deemed secured by a final order of this Honorable Court, in which case this class shall take nothing under this Plan. If the claim of Good Funding is deemed unsecured, this class and Class 2 shall receive $56.95 each month (cumulatively, not individually), for the life of the Plan, following the retirement of any administrative expense claims. |
| Class 6 – Equity interests in the Debtor | Unimpaired | Mark Petri shall retain his membership interest in the Debtor. |

---

[6] The Debtor recognizes that there are potential defaults of a non-economic variety. It is not reasonably anticipated any such default will occur. However, if the loan were to default, and the note to be called, it is reasonably believed the collateral is worth more than the total outstanding obligation, rendering it highly unlikely there would be any liability on the guaranty.

8

**Article 5.    Allowance and Disallowance of Claims**

**Section 5.01   Disputed Claim.** A *disputed claim* is a claim that has not been allowed or disallowed and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

**Section 5.02   Delay of Distribution of Disputed Claims.** No distribution will be made on account of a disputed claim unless such claim is allowed by a final, non-appealable order.

**Section 5.03   Settlement of Disputed Claims.** The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

**Section 5.04   Anticipated Disputed Claims**. The Debtor will file an objection to the claim of Good Funding, LLC within ninety (90) days of the Effective Date of this Plan. The Debtor does not presently anticipate objecting to any other claims herein, but reserves his right to do so. Any such claim objection must be filed by the Debtor within ninety (90) days from the effective date of this Plan (as defined in Section 8.02 hereof), *except* any objection to the claim of any governmental tax creditor may be filed at any time within ninety (90) days of the date on which such claim is filed.

**Article 6.    Provisions for Executory Contracts and Unexpired Leases**

**Section 6.01   Assumption.** The Debtor assumes the executory contracts and unexpired leases set forth on lines 2.1 through 2.5 of Schedule G (as found at DE #1). The Debtor also assumes all executory contracts and unexpired leases for (i) the provision of utility services to any building occupied by the Debtor; (ii) the provision of utility services to the Debtor; (iii) the provision of merchant loyalty rewards, whether in the form of points, coupons, or otherwise, to the Debtor; and (iv) the provision of insurance to the Debtor. The Debtor is a party to a post-petition lease with Mark Petri; it is not believed such needs to be assumed hereunder but, to the extent such is necessary, the Debtor assumes the subject lease.

**Section 6.02   Rejection.** The Debtor rejects all executory contracts and unexpired leases not assumed in Section 6.01 hereof.

**Article 7.    Means for Implementation of the Plan**

The primary means for implementing this Plan will be the Debtor's continued operation of a restaurant in Grafton, North Dakota. The business generates revenue from its ordinary sale of food and beverages; though revenue fluctuates on a seasonal basis (with late summer months often inviting losses), the Debtor believes it can generate sufficient funds, from such operation, to make the payments called for hereunder.

The Debtor also may hold certain claims, arising under Chapter 5 of the Bankruptcy Coder or applicable state law, against certain so-called merchant cash advance entities. The Debtor will bring any such claims, within ninety (90) days of the Effective Date, as adversary proceedings in

this Honorable Court, *except* the Debtor will not bring any claims that are (i) first settled, with said settlement being approved by this Honorable Court pursuant to Federal Rule of Bankruptcy Procedure 9019; (ii) for *de minimis* monetary sums, where the aggregate financial recovery to the Debtor's estate would be likely less than $10,000.00; and/or (iii) against entities that are, themselves, debtors in bankruptcy, or that otherwise have undertaken such corporate actions as to suggest their dissolution to be imminent and their collectability to be highly improbable.

The Debtor will be free to make prepayments under this Plan. Should it do so, the amount paid early – whether as a freestanding payment or in addition to the full sum of a prior payment – shall be credited against the Debtor's next-scheduled payment hereunder. If a pre-payment is larger than the next scheduled payment, such prepayment shall be credited against ensuing payment obligations, in chronological order from the date of said prepayment, until the prepaid sum is exhausted. Any monies recovered pursuant to these actions shall be tendered to the disbursing agent and used to make payments under this Plan over and above those provided for herein. For the avoidance of ambiguity, any such recoveries shall be a windfall to creditors and not a replacement for the monthly payment obligations of the Debtor.

The disbursing agent may distribute monies hereunder in the time and manner he deems most fit, *provided*, the disbursing agent shall distribute monies to creditors, in accord with the provisions of this Plan, not later than the ninetieth (90th) day on which he receives said monies, and the disbursing agent shall distribute the full sum of monies he receives under this Plan except for those monies reasonably necessary to cover the disbursing agent's fees and expenses, as discussed *infra*. It is reasonably anticipated that the disbursing agent may disburse monies on a quarterly basis, even though payments under this Plan are to be made on a monthly basis, with the delayed disbursement being designed to minimize the administrative expenses incurred by the disbursing agent.

**Article 8.      General Provisions**

**Section 8.01   Definitions and Rules of Construction.** The definitions and rules of construction set forth in §§ 101-02 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan.

**Section 8.02   Effective Date.** The effective date of this Plan is the first business day following the date that is 14 days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated.

**Section 8.03   Severability.** If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**Section 8.04   Binding Effect.** The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of, the successors, assigns and/or receiver(s) of such entity.

**Section 8.05   Default.** Should there occur a default under this Plan, creditors will have all rights provided for in the Bankruptcy Code (including Section 1112 thereof, inclusive of its allowances

for the bringing of a motion to convert this proceeding to one under Chapter 7 of the Bankruptcy Code) as well as the right to seek recourse for breach of contract together with such remedies as this Honorable Court may deem just and proper, sitting as a court of equity; such rights will also vest in any interested parties with Article III standing to pursue such rights. A default hereunder shall be deemed to occur if the Debtor fails to make any payment provided for by this Plan, in the full amount so provided, and does not cure such failure within thirty (30) days of being given written notice of said failure by a party in interest.

**Section 8.06   Disbursing Agent.** If this Plan is confirmed by consensual means, the Debtor will act as a disbursing agent and will directly make all payments hereunder, with such payments being made in consultation with the Debtor's general reorganization counsel who will be compensated for such services at the rate of $400.00 per hour. If this Plan is not confirmed consensually, the Subchapter V trustee will act as disbursing agent and will be compensated for such services at his usual and customary hourly rate and be reimbursed for reasonable and necessary expenses incurred (though if the Subchapter V trustee acts as disbursing agent, he may *not* retain counsel absent leave of this Honorable Court); such fees will be subject to court approval before being paid. Should the disbursing agent resign or otherwise become unavailable to fulfill such duties, the United States Trustee will appoint a new disbursing agent under this Plan.

**Section 8.07   Captions.** The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**Section 8.08   Controlling Effect.** Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure), the laws of North Dakota govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

**Section 8.09   Escheat.** If any distribution remains unclaimed for a period of 90 days after it has been delivered (or attempted to be delivered) in accordance with the Plan to the holder entitled thereto, such unclaimed property shall be forfeited by such holder.  Unclaimed property shall be (i) first paid to other members of the class of the claimant not claiming said distribution, until such a time as said class is paid in full; and (ii) then, if and when such class is paid in full, remaining funds shall be donated to the University of Miami School of Law Bankruptcy Clinic, to be administered by Patricia Redmond, Esq. in the charitable manner she sees most fit. The University of Miami School of Law Bankruptcy Clinic works with members of the South Florida legal community to provide *pro bono* services to persons in need of bankruptcy relief, while also furnishing law students with valuable pedagogical experience in the field of bankruptcy law.

**Section 8.10   Retention of Jurisdiction.** The United States Bankruptcy Court for the District of North Dakota shall retain jurisdiction of this Chapter 11 case to issue orders necessary to the consummation of the Plan; to determine the allowance of compensation and expenses of professionals; to determine any and all adversary proceedings, applications and contested matters; to determine issues or disputes relating to the assumption of executory contracts and any claims related thereto; to determine disputes as to classification or allowance of claims or interests; to issue such orders in aid of execution of this Plan to the extent authorized by § 1142 of the Bankruptcy Code; to enforce the provisions of the Plan; to recover all assets of the Debtor and property of the Debtor's estate, wherever located; to resolve any dispute between or among any of

the parties to this bankruptcy proceeding, to determine other such matters as may be set forth in a confirmation order or as may be authorized under the provisions of the Bankruptcy Code; to enter a final decree closing the bankruptcy case; and to correct any defect, cure any omission or reconcile any inconsistency in this Plan or confirmation order, and to take any action or make any ruling as may be necessary to carry out the purpose and intent of this Plan.

**Section 8.11   Modifications.** The Debtor may, with the approval of the Bankruptcy Court and without notice to holders of claims, correct any nonmaterial defect, omission, or inconsistency herein in such manner and to such extent as may be necessary or desirable. The Debtor may also amend this Plan in any manner that renders the terms hereof *more* favorable to creditors, with the approval of the Bankruptcy Court and without notice to holders of claims.

**Article 9.   Discharge**

**Section 9.01   Discharge.** Discharge shall be in accord with the Bankruptcy Code.

**Section 9.02   Effect of Discharge.** This discharge will be effective against all creditors of the Debtor given notice of this bankruptcy case and sent a copy of this Plan, together with their respective members, managers, insiders, shareholders, officers, directors, trustees and receivers.

**Article 10.   Retention of Certain Assets; Notice of Substantial Consumation**

**Section 10.01** Pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code, all rights arising under Chapter 5 of the Bankruptcy Code shall remain an asset of the Debtor's bankruptcy estate – and shall, accordingly, remain subject to the protections of Section 362(c)(1) of the Bankruptcy Code – to and through December 5, 2028, at which time said interest (should any remain) shall revest in the Debtor.

**Section 10.02** If the Plan is confirmed under 11 U.S.C. § 1191(a), the Debtor will file a Notice of Substantial Consumation not later than 14 days after the Plan is substantially consummated per 11 U.S.C. § 1183(c)(2).

    Respectfully Submitted,

    /s/ Maurice B. VerStandig
    Maurice B. VerStandig, Esq.
    THE DAKOTA BANKRUPTCY FIRM
    1630 1st Avenue N
    Suite B PMB 24
    Fargo, North Dakota 58102-4246
    mac@dakotabankruptcy.com
    *Counsel for the Debtor*