IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| In re: ) | |
| ) | Case No. 23-30246 |
| Bourbon Street LLC, ) | Chapter 11 – Subchapter V |
| d/b/a La Cantina, et al. ) | |
| ) | |
| Debtors, Jointly Administered. ) | |

### BOURBON STREETS, LLC'S SUBCHAPTER V PLAN OF LIQUIDATION

Comes now Bourbon Street, LLC ("Bourbon Street" or the "Debtor"), by and through undersigned counsel, pursuant to the rigors of Official Form 425A, and provides the following plan of liquidation (the "Plan") herein:[1]

### Background for Cases Filed Under Subchapter V

**a. Description and History of the Debtor's Business**

Bourbon Street was formed on March 5, 2021 and has operated a La Cantina restaurant, in Grand Forks, North Dakota, at all times since. The restaurant has a proud history of offering top notch cuisine, savory cocktails, and a relaxingly casual environment for the enjoyment of customers.

In an act of potential overambition, the Debtor entered into a lease that appears to be at a rate both (i) above now-prevailing market norms; and (ii) unsustainable in proration to Bourbon Street's cash flows. The mere act of paying rent has proven difficult for the Debtor, with such

---

[1] As noted *passim*, this Plan is not legally confirmable. Pursuant to Federal Rule of Bankruptcy Procedure 9011, it bears observation that this Plan is proposed simply as a placeholder, so as to permit amendment if a deal is struck with the Debtor's landlord prior to a confirmation hearing. If the Debtor were not to file a Plan, it is unclear if the Debtor could later do so, as the 90 day statutory timeline would have lapsed. *In re Majestic Gardens Condo. C Ass'n, Inc*., 637 B.R. 755, 756 (Bankr. S.D. Fla. 2022). And the Debtor does not believe that a hope of a breakthrough in negotiations, unmoored to any extant progress, would give rise to the "circumstances for which the debtor should not justly be held accountable" standard set forth in Section 1189 of the Bankruptcy Code.

For the avoidance of doubt, there is some modicum of boilerplate below, contemplative of what would happen if this Plan were confirmed. The Debtor understands this Plan cannot be confirmed. This Plan is being proposed solely to ensure an orderly approach to Chapter 7 conversion, if a deal is not struck, and to allow for amendment if a deal is struck. Nothing set forth herein is intended to suggest anything to the contrary. Since all classes receive nothing under this Plan, all classes are presumed to reject this Plan, and this Plan will not be balloted. The Debtor will also avoid formally serving this Plan outside of CM/ECF, so as to ensure there is no risk of unrepresented creditors being subject to undue confusion about the feasibility of this Plan.

1

becoming ever-harder as more commercial establishments leave the general vicinity and render the location increasingly less viable for the successful operation of a restaurant.

Pre-petition, Bourbon Street was supported by related insider entities, ultimately driving two such establishments into bankruptcy alongside the Debtor. The stresses of opening during a pandemic did not much help matters, nor did increases in the cost of food products.

Faced with these economic hardships, Bourbon Street followed in the steps of so many small businesses, turning to a series of merchant cash advances, for infusions of much-needed operating capital. The corporate equivalent of consumer payday loans, these putative sales of forward-looking receivables created a vicious cycle, whereby the Debtor was compelled to turn to new cash advances to retire its obligations on old cash advances, constantly bartering hefty forward-looking revenues at bargain-basement discounts, all in designs of managing to keep the lights on long enough to open for business another day.

On July 29, 2023, the Debtor petitioned for Chapter 11 relief, pursuant to the allowances of Section 301 of Title 11 of the United States Code. The Debtor's operations since have been relatively benign, albeit at a continuing – and not ultimately-sustainable – monthly loss. The Debtor harvested hopes of renegotiating its lease obligations during the bankruptcy process, but such hopes have thus far proven illusory.

This is a plan of liquidation. Bourbon Street will continue to operate for a short period of time, with hopes such will stretch until a confirmation hearing, but will close its doors once unable to make payroll or on the Effective Date, whichever may come first. On the date of the confirmation hearing, Bourbon Street with withdraw this Plan and file a motion to convert this case to a proceeding under Chapter 7, unless an accommodation is first reached with the Debtor's landlord and secured lender, in which case this Plan will be amended and the Debtor will move this Honorable Court to set a new schedule for balloting and confirmation.

Inasmuch as there is a significant priority claim owed to the Internal Revenue Service, and it is doubtful Choice Bank would agree to a carve out sufficient in size to pay said claim, the Debtor does not feign an ability to efficiently liquidate through Chapter 11. 11 U.S.C. § 1129(a)(9)(C). It is believed the tax claim could be reduced through objection, and an agreement ultimately reached with Choice Bank as to treatment of its secured claim, if the Debtor's rent obligation were reduced. Absent such, however, there is no viable path to paying the government's priority claim.

b. **Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a Chapter 7 liquidation. The Debtor entered bankruptcy with $89,061.94 in assets and has one secured creditor.[2]

Inasmuch as the Debtor appears to be administratively insolvent, it is not believed any money would be fetched for unsecured creditors in Chapter 7, though it is believed a Chapter 7 trustee may be able to efficiently liquidate the Debtor's assets for the benefit of the secured

---

[2] The claim of a second creditor is properly perfected but, by virtue of the senior creditor's claim exceeding the value of all collateral, the second secured claim is wholly unsecured in nature.

2

creditor, in exchange for some form of agreement whereby the secured creditor compensates the estate for such services.

### c. Ability to Make Future Plan Payments and Operate Without Further Reorganization

The Debtor must also show that it will have enough cash over the life of the Plan to make the required Plan payments. However, inasmuch as this is a plan of liquidation, the rigors of Section 1129(a)(11) of the Bankruptcy Code are not applicable. The Debtor is not committing to a fixed distribution herein but, rather, is committing to seeking conversion of this case to a proceeding under Chapter 7.

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections.**

**Article 1.    Summary**

This Plan under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") proposes to pay creditors of the Debtor from the general cash flow of the Debtor.

The Plan provides for:    1 class of secured claims;

1 classes of non-priority, unsecured claims; and

1 class of an equity holder.

Non-priority unsecured creditors holding allowed claims will not receive distributions. The Plan also provides for the payment of administrative claims.

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

**Article 2.    Classification of Claims and Interests**

**Section 2.01   Class 1**         The secured claim of Choice Bank.

**Section 2.02   Class 2**         All general unsecured claims.

**Section 2.03   Class 3**         Equity interests in the Debtor.

**Section 2.04   Class Identification**   A schedule of each class and its constituent creditors is appended hereto as **Exhibit A.** The total size of the non-disputed claims (or, where applicable, the non-disputed portion of claims) in each class is as follows:

Class 1: $183,155.55

Class 2: $494,588.83

Class 3: N/A (equity)

3

The total undisputed secured claims total $183,155.55. The total undisputed unsecured claims total $494,588.83.

**Article 3.    Treatment of Administrative Expense Claims and Court Costs**

**Section 3.01    Unclassified Claims**   Under § 1123(a)(1) of the Bankruptcy Code, certain administrative expense claims are not in classes.

**Section 3.02    Administrative Expense Claims**   Each holder of an administrative expense claim allowed under § 503 of the Bankruptcy Code will be paid in full on the effective date of this Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor. All professionals including the Debtor's counsel and the Subchapter V Trustee will need to file applications with the Court to seek approval of their fee and expenses as allowed administrative expense claims within 30 days of the Effective Date. The Debtor does not believe it can pay these claims and, as such, does not posit that this Plan can be confirmed in its current form.

**Section 3.03    Priority Tax Claims**   Each holder of a priority tax claim would need to be paid in full not later than July 28, 2028. The Debtor does not believe it can pay this claim (which would be otherwise subject to objection and potential reduction, albeit not elimination) and, as such, does not posit that this Plan can be confirmed in its current form.

**Section 3.04    Statutory Fees**   There are no statutory fees due in this case.

**Section 3.05    Prospective Quarterly Fees**   There are no prospective quarterly fees that will be due in this case.

**Article 4.    Treatment of Claims and Interest Under the Plan**

This Plan does not propose to pay any claims.

**Article 5.    Allowance and Disallowance of Claims**

**Section 5.01    Disputed Claim.** A *disputed claim* is a claim that has not been allowed or disallowed and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

**Section 5.02    Delay of Distribution of Disputed Claims.** No distribution will be made on account of a disputed claim unless such claim is allowed by a final, non-appealable order.

4

**Section 5.03    Settlement of Disputed Claims.** The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

**Article 6.        Provisions for Executory Contracts and Unexpired Leases**

**Section 6.01    Assumption.** The Debtor assumes the executory contracts and unexpired leases set forth on lines 2.2 through 2.7 of Schedule G (as found at DE #1), solely as a means of preserving hopes of a deal being reached with the Debtor's landlord but also knowing this Plan cannot be confirmed and, as such, these assumptions cannot be made effective.

**Section 6.02    Rejection.** The Debtor rejects all executory contracts and unexpired leases not assumed in Section 6.01 hereof.

**Article 7.        Means for Implementation of the Plan**

This Plan cannot be implemented inasmuch as the Debtor has no means of paying priority claims. This Plan can only be either withdrawn and/or amended.

**Article 8.        General Provisions**

**Section 8.01    Definitions and Rules of Construction.** The definitions and rules of construction set forth in §§ 101-02 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan.

**Section 8.02    Effective Date.** The effective date of this Plan is the first business day following the date that is 14 days after the entry of the confirmation order. If, however, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated.

**Section 8.03    Severability.** If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

**Section 8.04    Binding Effect.** The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of, the successors, assigns and/or receiver(s) of such entity.

**Section 8.05    Default.** Should there occur a default under this Plan, creditors will have all rights provided for in the Bankruptcy Code (including Section 1112 thereof, inclusive of its allowances for the bringing of a motion to convert this proceeding to one under Chapter 7 of the Bankruptcy Code) as well as the right to seek recourse for breach of contract together with such remedies as this Honorable Court may deem just and proper, sitting as a court of equity; such rights will also vest in any interested parties with Article III standing to pursue such rights. A default hereunder shall be deemed to occur if the Debtor fails to make any payment provided for by this Plan, in the

full amount so provided, and does not cure such failure within thirty (30) days of being given written notice of said failure by a party in interest.

**Section 8.06  Disbursing Agent.** There are no funds to be disbursed hereunder.

**Section 8.07  Captions.** The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

**Section 8.08  Controlling Effect.** Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure), the laws of North Dakota govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

**Section 8.09  Modifications.** The Debtor may amend this Plan, and seek a new scheduling order for confirmation, at any time before the confirmation hearing. 11 U.S.C. 1193(a). This Honorable Court is, of course, not required to afford a new scheduling order in such a circumstance, and the Debtor would need to establish cause sufficient to merit such relief.

Respectfully Submitted,

/s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
THE DAKOTA BANKRUPTCY FIRM
1630 1st Avenue N
Suite B PMB 24
Fargo, North Dakota 58102-4246
mac@dakotabankruptcy.com
*Counsel for the Debtor*